In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 07-3770

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RAYMELL MOORE,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07 CR 13—**J. P. Stadtmueller**, *Judge.*

———————

ARGUED MAY 29, 2008—DECIDED SEPTEMBER 10, 2008

———————

Before CUDAHY, POSNER, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.*  Raymell Moore pled guilty to federal drug charges and was sentenced to a statutory mandatory minimum term of 10 years' imprisonment. On appeal, he raises a "class of one" equal protection challenge to his sentence. He contends that he was similarly situated to a group of defendants charged in a state-court drug conspiracy case and that the imposition of the statutory mandatory minimum sentence was irrational in light of its non-application to the state-court defendants.

## I. Background

On two occasions in April and June of 2005, Moore and Curtis Jones sold crack cocaine to an undercover Milwaukee police officer and a confidential informant. On each occasion, Moore acted as the middleman in arranging the purchase, and Jones was the supplier. The two transactions involved a total of approximately 64 grams of crack cocaine and gave rise to the current federal case, in which Moore and Jones were charged as co-defendants.

Meanwhile, during the same time period in the spring of 2005, Wisconsin law enforcement officials were investigating the activities of a Milwaukee street gang known as "16 Deep/Flat Out" ("16-Deep"). That investigation culminated in the May 2006 filing of state drug conspiracy charges against some 17 individuals, including Jones. Moore's current challenge is based on a bit of overlap between that case and the present federal one. In the 16-Deep case, the state criminal complaint, in detailing the alleged criminal activities of the drug conspiracy, described as "Incident #6" the two sales of crack cocaine by Moore and Jones in April and June 2005—the same transactions that gave rise to the present federal case. Although the state criminal complaint documented Moore's participation in each of those transactions, he was not named as a defendant in the state case. Each of the state criminal defendants faced a potential maximum fine of $100,000 and a potential maximum imprisonment term of 40 years.

Several months later, in January 2007, a federal grand jury returned a three-count indictment against Jones and

Moore, charging each with conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) (Count One), and two counts of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts Two and Three). The federal indictment described a narrow conspiracy involving only Jones and Moore, alleging that they "conspire[d] and agree[d] with each other" to distribute 50 or more grams of crack cocaine, with nary a mention of the 16-Deep defendants or the broader set of drug-conspiracy activities alleged in the state case. In light of the federal prosecution of Jones, the state elected to drop its charge against him in the 16-Deep case. The state prosecution of the remaining 16-Deep defendants concluded in a variety of dispositions, ranging from outright dismissal to 12 years' imprisonment. In the present federal case, Moore and Jones both eventually entered into plea agreements with the government, and both pled guilty to Count One.

A few aspects of Moore's plea agreement and hearing bear mentioning here. First, in the plea agreement, the government agreed to recommend a sentence "within the sentencing guideline range, as determined by the court." The plea agreement also stipulated that the government could prove beyond a reasonable doubt, if the case had gone to trial, that the offense involved at least 50 grams of crack cocaine, triggering a statutory mandatory minimum 10-year sentence. *See* 21 U.S.C. § 841(b)(1)(A)(iii). In this regard, the plea agreement stated:

> The parties understand and agree that the offense
> to which the defendant will enter a plea of guilty

> carries the following maximum term of imprison-
> ment and fine: life imprisonment and $4,000,000.
> The count also carries a mandatory minimum of
> 10 years of imprisonment.

And finally, at the plea hearing, Moore confirmed his understanding that the offense carried a mandatory minimum 10-year sentence and maximum term of life imprisonment.

Moore's post-plea sentencing memorandum further reflected his understanding of the statutory mandatory 10-year minimum sentence. That memorandum acknowledged that the only possible statutory basis for a departure from the mandatory minimum in this case was 18 U.S.C. § 3553(e), under which the government could move for a lower sentence based upon "substantial assistance" from the defendant. The government did not file a § 3553(e) motion.

At sentencing, the district court determined that Moore's criminal history category was III and his offense level (net acceptance of responsibility) was 23, yielding a guideline sentencing range of 57 to 71 months' imprisonment. Because the high end of this range was lower than the statutory mandatory minimum sentence, this calculation was, as the court characterized it, somewhat "academic." Nonetheless, Moore argued that he was entitled to a two-point offense level reduction, pursuant to U.S.S.G. § 3B1.2(b), as a minor participant in the offense. In support of this argument, Moore's counsel attempted to paint him, by reference to the state case, as a minor figure in a large drug distribution scheme; he pointed out that,

despite the inclusion of "Incident #6"—detailing the two sales of crack cocaine by Moore and Jones that gave rise to this case—in the state criminal complaint, Moore had not been charged in the 16-Deep case. Moreover, he asserted that the 16-Deep defendants would likely face shorter sentences than Moore; so, the argument goes, not only was he so low in the 16-Deep drug-conspiracy hierarchy that state prosecutors apparently deemed him too unimportant to prosecute, but he also faced a potentially harsher sentence than the 16-Deep higher-ups simply by virtue of his prosecution in federal court.

In response to Moore's § 3B1.2(b) argument, the government attempted to clarify why Moore and Jones were prosecuted in federal, rather than state, court:

> [T]o address counsel, what actually happened, the state complaint that he submits involves a group called 1617 [sic] Deep that the state began investigating in late 2006—or actually, I'm sorry, late 2005 to early 2006. As they put their case together, they had been gathering names and some people. The buys off Mr. Jones and Moore that were done in 2005, were done as a separate investigation by a different agency that had hoped that that investigation would lead somewhere. Eventually it didn't. The state in their investigation, when they came across the name Curtis Jones, had learned about these buys and incorporated it into their complaint, even though the other agency had been deciding they needed to clean up those cases and brought them here [to the federal prosecutor].

The government then pointed out that the evidence against the defendants in the state case "differs wildly," and that "[t]o just comment that other people are getting different sentences there for substantially the same thing ignores the fact that the evidence in that case is very different as to each defendant." The government speculated that the state did not charge Moore in the 16-Deep state case because, although he was a known dealer, his "name did not come up as being part of that group."

Notwithstanding the effectively "academic" nature of the § 3B1.2(b) issue (in light of Moore's aim in arguing it—to obtain a sentence lower than the guideline range projected in the presentence report, which was itself lower than the statutory mandatory minimum), the court addressed this argument and rejected it because of Moore's "integral" role in facilitating the two drug transactions involved in the present case. And with respect to the potential disparity in sentences between those prosecuted in state and federal court, the court offered the following:

> Obviously, in the large scheme of things, if we deal with all offenders who at one point or another may be linked because of common sources of supply or common use of storage facilities or drug houses or the like, Mr. Moore and Mr. Jones may be viewed as a rather small fish in a big pond which, again, really calls into question did this case really deserve to be in the federal courts as opposed to state court. And that's a decision not for the court to make, but the executive branch of the government. . . . [O]nce again, these are all executive

branch decisions. And we can debate long and
hard as to whether they are wise, but that is not
for the court to do. . . . And again, all of this is
academic because at the end of the day he's still
facing a statutory mandatory 120-month sentence.

And indeed, this discussion was largely academic,
because Moore faced a statutorily mandated minimum
sentence well in excess of the initial guidelines calculation.
The court concluded that it had "to do the only thing
that the court can do and that is impose a sentence of
120 months for the conduct charged in count one." There-
fore, the court sentenced Moore to 10 years of imprison-
ment, 5 years of supervised release, and monetary penal-
ties in the form of a $100 assessment and $2200 of restitu-
tion. Jones, who was likewise subject to the mandatory
minimum because of the quantity of crack cocaine
involved in Count One, *see* 21 U.S.C. § 841(b)(1)(A)(iii),
also received a 120-month sentence.

Moore timely appealed. On appeal, he contests only his
sentence, contending that the district court's imposition
of the statutory mandatory minimum sentence denied
him both equal protection and due process in violation
of the Fifth Amendment to the Constitution. We take
up Moore's arguments below.

## II. Discussion

The crux of Moore's appeal is his contention that the
government committed a "class of one" equal protection
violation. In this vein, Moore argues that § 3553(e) is

unconstitutional as applied in this case because, in allow-ing a sentence below the statutory mandatory minimum *only* upon government motion to reflect a defendant's substantial assistance, the statute forced the district court to single him out for arbitrary and irrational treatment. Moore's equal protection and due process arguments turn on the same assertion—that the government arbi-trarily and irrationally singled him out for differential treatment from the defendants in the 16-Deep case. He does not articulate a due process argument independent of his equal protection argument, and it seems possible that he mentions due process only because equal protec-tion constraints on the federal government are imposed by the Due Process Clause of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1954) (recognizing equal protection component of Fifth Amendment Due Process Clause). Because we discern no independent due process argument, we evaluate Moore's challenge as a single constitutional argument premised on a class-of-one equal protection theory.

Turning to that class-of-one theory, we note that this is not a garden-variety equal protection challenge; such challenges are "typically . . . concerned with govern-mental classifications that affect some *groups* of citizens differently from others." *See Engquist v. Or. Dep't of Agric.*, 128 S. Ct. 2146, 2152 (2008) (emphasis added and quota-tion omitted) (citing collected cases). Therefore, individuals pursuing equal protection challenges ordinarily "allege that they have been arbitrarily classified as members of an 'identifiable group.'" *Id.* In contrast, a class-of-one equal protection challenge asserts that an individual has

been "irrationally singled out," without regard for any group affiliation, for discriminatory treatment. *Id.* at 1253. A class-of-one equal protection claim is cognizable where an individual alleges that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

Before discussing this theory, we should note that Moore made no such constitutional argument before the district court. His arguments about the 16-Deep case, both in his sentencing memorandum and at the sentencing hearing, focused on whether he should receive a minor-participant reduction under the Sentencing Guidelines or similar consideration under 18 U.S.C. § 3553(a) because his criminal conduct was less culpable than most of the 16-Deep defendants. His sentencing arguments did not even hint at a constitutional basis. That means that his argument was forfeited (if not waived) and should be reviewed here, if at all, only under the exacting plain error standard. *United States v. Allen*, 529 F.3d 390, 395 (7th Cir. 2008) ("To establish plain error, [the defendant] has to demonstrate a clear error that affects a substantial right and, moreover, impacts the fairness, integrity, or public reputation of judicial proceedings." (quotation omitted)). Nevertheless, the standard of review is inconsequential to the outcome here; as explained below, Moore's challenge lacks any merit even if reviewed de novo.

In order to establish a class-of-one equal protection violation, Moore must first show that he was "intentionally

treated differently from others similarly situated." *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1002 (7th Cir. 2006); *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). Moore argues, of course, that he was similarly situated to the defendants charged in the "16 Deep/Flat Out" state case. To be considered "similarly situated," the class-of-one challenger and his comparators must be *"prima facie* identical in all relevant respects or directly comparable . . . in all material respects." *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) (internal citation and quotations omitted); *see also Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002). Although this is not a "precise formula," it is nonetheless "clear that similarly situated individuals must be very similar indeed." *McDonald*, 371 F.3d at 1002.

Moore apparently regards the fact that he and the state defendants were charged and prosecuted by separate sovereigns in different fora as immaterial to the similarly-situated analysis; indeed, his similarly-situated argument depends on this premise. However, it is a premise that we reject. First, we note that Moore's differential treatment from the state defendants cannot be attributed to a single decision-maker. Rather, the separate federal and state prosecutions necessarily involved at least two decision-makers, one federal and one state; this alone works against a finding of similarity. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) (explaining that where "different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects" (quotation omitted)); *see also Purze*,

286 F.3d at 455 (finding that class-of-one plaintiffs were not similarly situated to comparators in part because their zoning-related requests were acted upon by different decision-makers). Moreover, it is well-established that "under principles of dual sovereignty, both the state and the federal government may sentence a defendant for actions criminal under both state and federal law." *Reed v. United States*, 985 F.2d 880, 882 (7th Cir. 1993) (citing *Heath v. Alabama*, 474 U.S. 82, 88 (1985)). And it goes without saying that Congress and the state legislatures are free to fashion their own, differing approaches to criminal problems and sentencing. Thus, two defendants, one charged in federal court and the other in state court, who are otherwise identical in all material respects, are not similarly situated at the sentencing stage, where they may face very different penalties. That the federal defendant may face harsher punishment than his state counterpart, or vice versa, simply does not raise equal protection concerns.

Of course, this does not preclude the possibility that our two hypothetical defendants *might* have been similarly situated at an earlier stage in the process—most notably, when the charging decision was made. So a challenge to the initial charging decision might have some merit, if, for example, some aspect of that decision was based on an impermissible criterion, such as race or religion. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996). But Moore does not allege invidious discrimination in the charging decision, so we need not elaborate on this point.

Even if we were to accept Moore's initial premise—that prosecution by separate sovereigns in different fora is an immaterial difference for purposes of the "similarly situated" analysis—he still fails to show that he was similarly situated to the state defendants. As already noted, Moore argues that he was similarly situated to the state defendants because their offenses involved similar crack cocaine amounts (40-100 grams) and "because they were all named and charged as such by Wisconsin prosecutors, and Jones and Moore were charged by the United States Attorney's Office as coconspirators, too." Even if we assume for the moment that Moore's dubious characterization of the state defendants as his "coconspirators" is correct—dubious because the federal indictment alleged a narrow conspiracy involving only Jones and Moore—and that the factual details of their offenses are largely similar, that alone would not render them similarly situated. The Sentencing Guidelines and § 3553(a) incorporate a host of considerations that make sentencing an individualized process going well beyond the details of the defendant's instant offense. *See, e.g.*, § 3553(a)(1) (directing the court to consider "the history and characteristics of the defendant" in choosing an appropriate sentence). In this regard, Moore's failure to present any criminal history background on the state-court defendants is particularly glaring. This is a critical federal sentencing factor, *see* § 3553(a)(1), (4), and presumably Wisconsin courts also weigh criminal history heavily. Moore, at the relatively young age of 26, had already earned enough criminal history points to land in Category III in the federal sentencing guidelines formula. This

history included a Wisconsin conviction for a serious battery which was committed *after* the drug sales on which this federal prosecution was based. We have no way to compare the variety and seriousness of Moore's criminal background with the 16-Deep defendants, and thus cannot begin to assess whether he was irrationally treated differently. *See Racine Charter One*, 424 F.3d at 680 (explaining that comparators must be directly comparable in *all* material respects). And this need for a more detailed comparison is magnified in light of the variety of punishments—ranging from outright dismissal to 12 years' imprisonment—that the state defendants received; Moore could hardly base an equal protection claim on a comparator who received a sentence more harsh than his own. For all these reasons, Moore's class-of-one challenge never gets off the ground.

In seeking to show a class-of-one equal protection violation based solely upon purported irrationality, rather than illegitimate animus, Moore faces other, even more intractable problems. Under one line of cases in this Circuit, Moore's failure to allege illegitimate animus would foreclose his class-of-one challenge. *See Racine*, 424 F.3d at 684 (citing collected Seventh Circuit cases requiring proof of illegitimate animus for a successful class-of-one challenge); *see also Crowley v. McKinney*, 400 F.3d 965, 972 (7th Cir. 2005); *Purze*, 286 F.3d at 455; *Cruz v. Town of Cicero*, 275 F.3d 579, 587 (7th Cir. 2001); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). However, another line of cases would allow a successful class-of-one challenge upon proof that the differential treatment was *either* simply irrational *or* motivated by illegiti-

mate animus. *See Racine*, 424 F.3d at 684 (citing collected Seventh Circuit cases holding "that a class of one equal protection claim is established where the defendant has intentionally treated the plaintiff differently than others similarly situated either without any rational basis for doing so or out of some totally illegitimate animus" (quotation omitted)); *see also Vision Church*, 468 F.3d at 1002; *Lunini v. Grayeb*, 395 F.3d 761, 768 (7th Cir. 2005); *Levenstein v. Salafsky*, 414 F.3d 767, 775-76 (7th Cir. 2005); *McDonald*, 371 F.3d at 1001; *Nevel v. Vill. of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). The more narrow formulation represented by the former line of cases reflects, at least in part, a concern that allowing a remedy under the equal protection clause for merely "irrational and wholly arbitrary adverse treatment by government," without proof of something more (such as illegitimate animus), would open "[b]reathtaking vistas of liability." *Tuffendsam v. Dearborn County Bd. of Health*, 385 F.3d 1124, 1127 (7th Cir. 2004) (quotation omitted); *see also Bell v. Duperrault*, 367 F.3d 703, 712 (7th Cir. 2004) (Posner, J., concurring) (pointing out that "irrational differences in treatment having nothing to do with discrimination against a vulnerable class abound at the bottom rung of law enforcement" and offering the example of a policeman exercising the discretion inherent in dispensing traffic tickets). In holding that class-of-one challenges have no place in the public employment context, 128 S. Ct. at 2148-49, and in suggesting that such challenges may be inapplicable to any governmental action that is the product of a highly discretionary decision-making process, *id.* at 2154-55, the

Supreme Court's recent *Engquist* decision seems to go a long way toward alleviating this problem without reliance on a possibly difficult-to-apply motive test. *See Bell*, 367 F.3d at 713 (Posner, J., concurring) (noting that motive tests are "not very satisfactory and are therefore sparingly employed" but nonetheless acknowledging that there might not be a "better way of reining in the class-of-one cases"); *see also Engquist*, 128 S. Ct. at 2154 (invoking the same traffic-ticket hypothetical used by Judge Posner in *Bell* to illustrate the difficulty with class-of-one challenges in discretionary decision-making contexts; "[A]llowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action."). We discuss the *Engquist* decision and its application to the current case in more detail later in this opinion; for now, it is enough to note that Moore's class-of-one challenge is premised solely on irrationality, and because his challenge ultimately fails, we need not attempt a comprehensive reconciliation of the two lines of authority in this Circuit discussed above. *See RJB Props., Inc. v. Bd. of Educ.*, 468 F.3d 1005, 1010 n.2 (7th Cir. 2006) (declining to reach this issue for similar reason); *Smith v. City of Chi.*, 457 F.3d 643, 652-53 (7th Cir. 2006) (same).

Turning again to Moore's challenge, the purported irrationality he identifies is his prosecution in federal, rather than state, court solely for reasons of administrative convenience. But this highlights a peculiar disconnect in Moore's argument; the irrationality that he objects

to cannot be fairly attributed to the judicial action (the district court's failure to depart from the mandatory minimum sentence), or even the entity responsible for that action (the district court), that he ostensibly challenges. In this respect, Moore's argument is quite unlike the typical class-of-one claim, in which the purported irrationality is part and parcel of the challenged governmental (usually executive or legislative) action. *See, e.g.*, *Olech*, 528 U.S. at 565 (involving class-of-one claim based on village's demand for easement more than twice as long as the village demanded of similarly situated property owners); *McDonald*, 371 F.3d at 1003 (involving class-of-one claim based on fire department's departure from its ordinary fire-investigation operating procedure); *Hilton*, 209 F.3d at 1007-08 (involving class-of-one claim premised on failure to provide plaintiff with the same police protection afforded to others similarly situated). Indeed, the purported irrationality identified by Moore—the decision to prosecute him, perhaps solely for reasons of administrative convenience, in federal, rather than state, court—originated with a decision that was made in the prosecutorial sphere. Thus, despite his attempt to cloak his argument in terms of an as-applied challenge to § 3553(e), his argument is nakedly aimed at the exercise of prosecutorial discretion.

In challenging an exercise of the broad prosecutorial discretion that inheres in our criminal justice system, Moore faces a formidable obstacle. Indeed, "[i]n the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prose-

cute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation omitted); *see also Wayte v. United States*, 470 U.S. 598, 607 (1985); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Of course, this broad discretion is subject to constitutional restraints, and cannot be based upon invidious criteria such as race or religion. *Armstrong*, 517 U.S. at 464; *Wayte*, 470 U.S. at 608; *Bordenkircher*, 434 U.S. at 364. But an exercise of prosecutorial discretion cannot be successfully challenged merely on the ground that it is irrational or arbitrary; in the realm of prosecutorial charging decisions, only invidious discrimination is forbidden. *See United States v. Smith*, 502 F.3d 680, 691 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 1270 (2008); *United States v. Duncan*, 479 F.3d 924, 928 (7th Cir.) (per curiam) ("Absent a showing of invidious discrimination, we shall not second-guess a prosecutor's decision regarding the charges it chooses to bring."), *cert. denied*, 128 S. Ct. 189 (2007); *United States v. Roberson*, 474 F.3d 432, 434 (7th Cir. 2007) ("The judiciary has no authority to second-guess the government's choice of which crimes to charge unless the choice is based on an invidious ground . . . ." (internal citations omitted)); *United States v. Smith*, 953 F.2d 1060, 1063 (7th Cir. 1992) ("Arbitrariness—that is, unjustified disparities in the treatment of similarly situated persons—is not among the grounds on which to contest an exercise of prosecutorial discretion."). Moore's challenge is premised on irrationality, not invidious discrimination; because a no-rational-basis challenge to the exercise of prosecutorial discretion is doomed to failure, his class-of-one argument is fore-

closed for this reason as well. As the district court correctly pointed out at sentencing, under ordinary circumstances, the federal charging decision is solely for the executive branch to make without fear of second-guessing by the judiciary.

Our conclusion is consistent with and reinforced by the Supreme Court's recent explanation in *Engquist* that class-of-one equal protection theory is a "poor fit" where the challenged governmental action is the product of a broadly discretionary decision-making process. *See* 128 S. Ct. at 2155. In holding that class-of-one claims have "no application in the public employment context," *id.* at 2156, the Court explained:

> There are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.
>
> . . . .
>
> Thus, the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them

differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship. A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action.

*Id.* at 2154-55. Thus, the class-of-one theory is better suited to those contexts involving "a clear standard against which departures, even for a single [individual], could be readily assessed." *Id.* at 2153 (citing *Olech*, 528 U.S. at 564-65 (involving class-of-one challenge to zoning board's departure from standard easement length requirement); *Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County*, 488 U.S. 336, 339-42 (1989) (involving equal protection challenge to county's departure from market-value standard in conducting some property assessments)).

This logic is equally applicable to the exercise of prosecutory discretion. To treat like individuals differently in this context, even without a strictly rational justification, "is not to classify them in a way that raises equal protection concerns," *Engquist*, 128 S. Ct. at 2155; the discretion conferred on prosecutors in choosing whom and how to prosecute is flatly inconsistent with a presumption of uniform treatment. Indeed, in this context, there is no readily apparent standard against which departures

can be assessed for arbitrariness. Therefore, a class-of-one equal protection challenge, at least where premised solely on arbitrariness/irrationality, is just as much a "poor fit" in the prosecutorial discretion context as in the public employment context. Accordingly, Moore's class-of-one challenge fails for this reason as well.

In closing, we briefly address one additional nuance to Moore's argument. He contends that his sentencing outcome is particularly irrational in light of the government's promise, pursuant to the plea agreement, to recommend a sentence within the guideline range. As already discussed, the originally calculated guideline sentencing range was lower than the statutory mandatory 120-month minimum sentence. However, because the Sentencing Guidelines stipulate that, in this scenario, the mandatory minimum becomes the guideline sentence, *see* U.S.S.G. § 5G1.1(b), this argument has no traction at all.

## III.  Conclusion

For the foregoing reasons, Moore's sentence is AFFIRMED.