In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2789

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ELEAZAR CORRAL VALENZUELA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-08423 — **Matthew F. Kennelly**, *Judge.*

ARGUED APRIL 15, 2019 — DECIDED JULY 26, 2019

Before WOOD, *Chief Judge,* and BAUER and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Seventeen years after Eleazar Corral Valenzuela (Corral) was convicted of aggravated criminal sexual abuse of a minor family member in Illinois state court, the United States filed a civil complaint to revoke his naturalized citizenship and cancel his certificate of naturalization. 8 U.S.C. § 1451(a). The district court granted the government judgment

on the pleadings, *see* Fed. R. Civ. P. 12(c), after dismissing Corral's affirmative defenses. We affirm.

I

Corral, a native of Mexico, was admitted to the United States as a lawful permanent resident in 1994. In January 1999, he applied for naturalization, and he became a United States citizen in June 2000.

Shortly after, a grand jury in Kane County, Illinois indicted Corral on seven counts of aggravated criminal sexual abuse. Less than five months after becoming a United States citizen, Corral pleaded guilty to one count of the indictment, which charged:

> On or about June 9, 1998 through February 26, 2000, Eleazar Corral committed the offense of Aggravated Criminal Sexual Abuse, Class 2 Felony in violation of Chapter 720, Section 5/12-16(b) of the Illinois Compiled Statutes, as amended, in that said defendant committed an act of sexual conduct with [redacted] in that the defendant knowingly touched the vagina of [redacted] for the purpose of the sexual gratification of the defendant.

Corral was convicted under Illinois's aggravated criminal sexual abuse statute, 720 ILCS 5/12-16(b), which at the time of his conviction stated:

> The accused commits aggravated criminal sexual abuse if he or she commits an act of sexual conduct with a victim who was under 18 years of age when the act was committed and the accused was a family member.

In 2017, the United States filed a five-count civil complaint seeking to revoke Corral's citizenship on the grounds that he

obtained his citizenship illegally and by willful misrepresentation or concealment of a material fact. *See* 8 U.S.C. § 1451(a). We focus on the first count of the government's complaint, which alleged that Corral lacked good moral character because he committed a crime involving moral turpitude within the statutory period. *See* 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(1). In other words, the government sought to revoke Corral's citizenship based on his failure to comply with a statutory prerequisite for naturalization, namely, having good moral character during the five years preceding his application for citizenship until the time he took the oath of allegiance to the United States. *See Fedorenko v. United States*, 449 U.S. 490, 506 (1981) ("Failure to comply with any of these conditions renders the certificate of citizenship 'illegally procured,' and naturalization that is unlawfully procured can be set aside.").

Corral filed an answer and a motion to dismiss/strike seeking discovery and an evidentiary hearing. Around the same time, the United States filed its motion for judgment on the pleadings. The district court denied Corral's motion and granted the government's motion with respect to the first count of the complaint. The district court dismissed the remaining counts as moot and granted Corral's motion to stay execution of the judgment. This appeal followed.

II

We first turn to the district court's grant of the government's motion for judgment on the pleadings, which we review *de novo. Kanter v. Barr*, 919 F.3d 437, 440-41 (7th Cir. 2019).

We have described a crime involving moral turpitude as "conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Sanchez v. Holder*, 757 F.3d 712, 715 (7th Cir. 2014) (quotations omitted). Corral concedes that his Illinois conviction for aggravated criminal sexual abuse of a minor is a crime of moral turpitude under our precedent, but he nonetheless makes a half-hearted request that we reconsider. His argument is waived—and doubly so.

Corral cites to *Quintero-Salazar v. Keisler*, 506 F.3d 688, 692-94 (9th Cir. 2007), and argues that there the Ninth Circuit "decided differently" than we have "based on similar facts." He failed, however, to cite *Quintero-Salazar* or make this argument to the district court. We therefore cannot consider it. *Wheeler v. Hronopoulos*, 891 F.3d 1072, 1073 (7th Cir. 2018). If that were not enough, the argument Corral now makes is woefully underdeveloped. He cites *Quintero-Salazar* without explaining or defending its rationale. What is more, for the argument to succeed, Corral would likely need to show that his crime, 720 ILCS 5/12-16(b), is *categorically* not one of moral turpitude. *See Garcia-Martinez v. Barr*, 921 F.3d 674, 681 (7th Cir. 2019) (explaining that the categorical approach applies, unless the underlying statute is divisible, in which case a modified categorical approach applies). That is often a complicated question in any case, *id.* at 675, and it is one with which Corral does not even attempt to wrestle. For this reason, too, the argument is waived. *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018).

### III

Corral's other arguments concern his laches and selective prosecution affirmative defenses. He raised these defenses in his "Motion to Dismiss / Strike Complaint," which, as the district court recognized, was "not so much a motion to dismiss as a request for discovery and a hearing." The district court's denial of Corral's motion involved purely legal questions, so we review it *de novo*.

### A

To establish his laches defense, Corral must show the government's lack of diligence and resulting prejudice. *Navarro v. Neal*, 716 F.3d 425, 439 (7th Cir. 2013). Assuming the government did not exercise diligence in bringing this revocation action, Corral argues that the government's 17-year delay caused evidentiary prejudice due to the government's failure to provide an affidavit of the immigration officer who conducted his naturalization interview and the subsequent unavailability of the immigration officer. He argues that had the immigration officer provided testimony, he would have clarified whether Corral made misrepresentations or concealed material facts during the naturalization process, thus supporting a violation of 8 U.S.C. § 1451(a).

Whether Corral made a willful misrepresentation or concealed a material fact is irrelevant because these factors do not relate to the ground for Corral's denaturalization. Recall that Corral's citizenship was revoked based on his failure to comply with a statutory prerequisite for naturalization—having good moral character during the five years preceding his application for citizenship until the time he took the oath of allegiance to the United States. His citizenship was not revoked

for willfully mispresenting or concealing a material fact. Therefore, Corral's "evidentiary prejudice" argument fails.[1]

Still, the government asks us to clarify that laches never applies in civil denaturalization actions. We are reluctant to adopt such a categorical rule in light of possible changes to criminalization standards and public mores. And we decline to do so here given that resolution of this case does not require it.

B

Corral further asserts a selective prosecution defense under equal protection standards, arguing that the government's decision to denaturalize him 17 years after his criminal conviction is suspicious based on perceived changes in executive policy. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996); *Wayte v. United States*, 470 U.S. 598, 608-09 (1985). Assuming that any such defense applies in the context of civil denaturalization proceedings, by challenging the exercise of broad prosecutorial discretion, Corral encounters "a formidable obstacle." *United States v. Moore*, 543 F.3d 891, 899 (7th Cir. 2008). Corral cannot merely challenge the exercise of prosecutorial discretion on the ground that it was irrational, but rather he must show that the decision to prosecute was deliberately based on invidious criteria such as race, religion, or other arbitrary classifications. *Armstrong*, 517 U.S. at 464; *Moore*, 543 F.3d at 900.

---

[1] We need not address Corral's "expectational prejudice" argument raised for the first time on appeal. *See Duncan Place Owners Assoc. v. Danze, Inc.*, 927 F.3d 970, 973 (7th Cir. 2019) ("Arguments not raised in the district court are waived.").

Corral argues that the government targeted only a handful of child sexual abusers for denaturalization, including himself, and that "[i]t would seem to defy simple logic that in seventeen (17) years, the Government had only become aware of these five (5) individuals who had been naturalized and later convicted of felony offenses who they then chose to target." Not only is Corral's argument based on a questionable premise, namely, that the United States selectively sought to denaturalize convicted child sexual abusers in only five instances in the last 17 years, but he fails to explain how the government's decision was deliberately based on invidious criteria. Indeed, all he has shown is that the government brought denaturalization actions against some individuals who were convicted of the sexual abuse of children. Otherwise, Corral's position that a change in executive policy might have had something to do with the timing of his denaturalization proceedings, alone, simply does not support a selective prosecution defense.

For these reasons, we AFFIRM the district court.