# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3811

_____

| | | |
|---|---|---|
| Stephen Novotny, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Tripp County, South Dakota; Tripp | * | |
| County Weed Board; Virgil Novotny, | * | |
| Doris Miner, Greg English, | * | Appeal from the United States |
| individually and in their capacity as | * | District Court for the |
| a Tripp County Commissioner; | * | District of South Dakota. |
| Marion Best, individually and in his | * | |
| capacity as a Tripp County | * | |
| Commissioner and a Tripp County | * | |
| Weed Board Member; Roger Turnquist, | * | |
| Brian Henderson, Dan Musilek, Jim | * | |
| Massa, individually and in their | * | |
| capacity as a Tripp County Weed | * | |
| Board Member; Gregory Womeldorf, | * | |
| individually and in his capacity as the | * | |
| Tripp County Weed Board Supervisor; | * | |
| Clifford Schroeder, individually and | * | |
| in his capacity as the Tripp County | * | |
| Sheriff, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: October 19, 2011
Filed: December 19, 2011

_____

Before RILEY, Chief Judge, SHEPHERD, Circuit Judge, and MAGNUSON,[1] District Judge.

_____

SHEPHERD, Circuit Judge.

Stephen Novotny (Novotny) appeals the district court's summary judgment order in favor of appellees dismissing his claims brought pursuant to 42 U.S.C. §§ 1983 and 1985.  After sorting through the sundry allegations made in Novotny's brief, we are unable to agree with his contention that the district court improperly granted summary judgment.[2]  Accordingly, we affirm.

I.

"We review a district court's grant of summary judgment de novo," Mwesigwa v. DAP, Inc., 637 F.3d 884, 887 (8th Cir. 2011), and we will affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  We view "the evidence and the inferences that may reasonably be drawn therefrom in the light most favorable to the nonmoving party." Alpine Glass, Inc. v. Ill. Farmers Ins. Co., 643 F.3d 659, 666 (8th Cir. 2011).

Novotny had a "long history of hostility" with his Uncle Virgil Novotny (Virgil) and with Roger Turnquist, Virgil's neighbor and political ally.  Virgil was a member of the Tripp County Commission, and Turnquist was a member of the Tripp County Weed Board.  Novotny was openly critical of the Tripp County Commission,

_____

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation.

[2] The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

-2-

writing letters to the local newspaper and speaking at commission meetings. Virgil approached the local newspaper and ordered it to stop publishing Novotny's letters. Virgil advised the newspaper editor that if the newspaper continued to publish Novotny's letters, Tripp County would use another newspaper for the publication of legal notices. Novotny also claims that members of the county commission and county weed board had heavier weed infestations than Novotny, but weed abatement procedures were only being instituted against Novotny.

Novotny sued Tripp County, the Tripp County commissioners, members of the Tripp County Weed Board, and the Tripp County sheriff. In his amended complaint, Novotny alleged deprivation of his First Amendment rights, deprivation of his Fourteenth Amendment rights, and civil conspiracy under 42 U.S.C. § 1985. After the parties completed discovery, appellees moved for and were granted summary judgment dismissing all claims.

## II.

In his appeal, Novotny argues that the district court erred by not fully reviewing the facts or the law that supported his action. We will address each of his claims in turn.[3]

---

[3]Novotny also asserts that the district court erred in striking a transcript and an affidavit attached to his brief in opposition to summary judgment. The transcript is of a purported conversation with Sandy Steffen, an attorney in Gregory, South Dakota, who was appointed the Tripp County State's Attorney Pro Tem for the sole purpose of prosecuting Tripp County Weed Supervisor Greg Womeldorf for perjury. The affidavit from Don Bender, a private investigator, is offered to impeach the testimony of Virgil in regard to his actions at the local newspaper. We do not address whether these documents were improperly stricken because the testimony which was disallowed would not alter the outcome of our analysis.

## A. First Amendment Claim

"To state a claim under [42 U.S.C. § 1983], a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right." Van Zee v. Hanson, 630 F.3d 1126, 1128 (8th Cir. 2011). The First Amendment right to free speech "includes the right to attempt to persuade others to change their views, and may not be curtailed simply because the speaker's message may be offensive to his audience." Hill v. Colorado, 530 U.S. 703, 716 (2000).

Novotny's First Amendment claim is based on his allegation that Virgil threatened to vote to withdraw county publication business from the newspaper if it continued to publish Novotny's letters to the editor. The district court granted appellees' motion for summary judgment on this claim because the court found no evidence that Virgil was acting on behalf of the county when he issued his ultimatum. The trial court further concluded that, even if Virgil was an agent of the county, any potential damage claim would belong to the newspaper.

In his appeal, Novotny argues that the district court erred in its First Amendment analysis. However, we find no error in the district court's conclusion that Novotny failed to establish a violation of his First Amendment rights. At oral argument, Novotny's counsel conceded that an individual does not possess a constitutional right to require that a privately owned newspaper publish his letter to the editor. Indeed, a contrary rule would infringe upon the right of the newspaper itself to decide what content it includes on its own editorial page. See Miami Herald Publ'g Co. v. Tornillo, 418 U.S. 241, 256-58 (1974) ("The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment."). Accordingly, any potential First Amendment claim arising from Virgil's threats to the newspaper belong

-4-

to the newspaper and not to Novotny.  See Warth v. Seldin, 422 U.S. 490, 499 (1975).  We agree with the district court that Novotny has failed to establish standing to pursue any First Amendment claim.  Therefore, the dismissal of Novotny's First Amendment claim was proper.

## B.  Fourteenth Amendment Claims

The district court granted summary judgment to appellees on Novotny's Fourteenth Amendment claims, finding that "[d]espite wordy and frankly rambling allegations, no authority is cited and no specific constitutional right is defined."  On appeal, Novotny claims two separate deprivations under the Fourteenth Amendment, one based on substantive due process and the other based on equal protection.  We find that the evidence supporting Novotny's claims remains insufficient to survive summary judgment.

First, Novotny fails to present sufficient evidence to support a prima facie substantive due process claim.  "[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases . . . ."  Myers v. Scott Cnty., 868 F.2d 1017, 1019 (8th Cir. 1989).  To prevail on a substantive due process claim, Novotny must show "a constitutionally protected property interest and that [county] officials used their power in such an arbitrary and oppressive way that it 'shocks the conscience.'"  Gallagher v. Magner, 619 F.3d 823, 840 (8th Cir. 2010) (citation omitted).  Novotny asserts that he "had a property right in his chosen profession and business and a right not to have same wrongfully interrupted or interfered with by the actions of Tripp County," but he fails to show how his profession was unlawfully interfered with by Tripp County officials or how any interference rose to a level that shocks the conscience.  And although Novotny asserts that a protective order against

him procured by Tripp County Weed Supervisor Greg Womeldorf violated his "right not to be excluded from public places," Novotny presents no evidence that he was ever denied the freedom to go to and from public places as he pleased.

Likewise, although Novotny asserts that county weed ordinances were unequally enforced against him, Novotny has not presented sufficient evidence to support an equal protection claim. "While we review the record in the light most favorable to [Novotny] as the non-moving party, we do not stretch this favorable presumption so far as to consider as evidence statements found only in inadmissible hearsay." Mays v. Rhodes, 255 F.3d 644, 648 (8th Cir. 2001). Novotny supports his equal protection claim by pointing to two letters from the South Dakota Department of Agriculture to Gary Elder, the president of the Tripp County Weed Board, and integrated into the record by plaintiff's counsel's affidavit. However, the statements of fact in these letters amount to inadmissible hearsay and, as such, are insufficient to defeat summary judgment. Brunsting v. Lutsen Mountains Corp., 601 F.3d 813, 817 (8th Cir. 2010); see also Fed. R. Evid. 801(c). For example, in the first letter, a Department of Agriculture administrator recounts meeting with Supervisor Womeldorf to address a voluntary compliance letter sent by Womeldorf to Novotny concerning a patch of thistle on Novotny's property. According to the letter cited by Novotny, the administrator investigated other nearby properties where enforcement actions had not been taken by Womeldorf but where similar noxious weeds were present. To the extent that the letter is offered to prove that the weed ordinances were being unequally enforced, the letter constitutes inadmissible hearsay and summary

judgment was appropriate.[4] See Brooks v. Tri-Systems, Inc., 425 F.3d 1109, 1111 (8th Cir. 2005).

Even if the letters' hearsay accounts were admissible to prove disparate treatment, Novotny's equal protection claim would still fail as a matter of law. Although the Supreme Court has recognized a "class-of-one" theory, see Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), it has declined to apply the principle against state action "which by [its] nature involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments." Engquist v. Or. Dep't of Agric., 553 U.S. 591, 603 (2008). The class-of-one theory prohibits "arbitrary government classification," such as where legislation or a regulation is enacted that targets a specific landowner and applies a different rule to him than his neighbors. See Olech, 528 U.S. at 564-65 (finding equal protection violation where village required 15-foot easements of property owners seeking access to water supply but conditioned plaintiff's connection on a grant of a 33-foot easement). However, a class-of-one claim does not extend to cases where the rules are uniformly applicable and a state official exercises his "discretionary authority based on subjective, individualized determinations." See Engquist, 553 U.S. at 602-03. For example, an equal protection claim does not arise in the public employment context where one employee is given a promotion over another employee because such a decision is based on "the broad discretion that typically characterizes the employer-employee relationship." Engquist, 553 U.S. at 605, 608 (noting that the

---

[4] Novotny also includes cites to the deposition testimony of Elder and Womeldorf to show that Womeldorf was reprimanded by county officials after receipt of the first letter from the Department of Agriculture. However, Elder's testimony provides no first-hand knowledge as to whether weed ordinances were being unequally enforced, and Womeldorf only admits that the letter was the basis of his reprimand. As a result, this deposition testimony is also insufficient to defeat summary judgment on Novotny's equal protection claim.

Court was guided by the "common-sense realization that government offices could not function if every employment decision became a constitutional matter" (citation omitted)). Likewise, an equal protection claim does not lie where a traffic officer gives only one person a ticket on a busy highway because "allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action." Id. at 604.

In the instant case, any action taken against Novotny was not the result of arbitrary government classification. Instead, the decision to send Novotny a voluntary compliance letter was similar to a decision not to promote a particular employee or to give a ticket on a busy highway. Although Novotny may have felt that county officials received better treatment than he, the enforcement of county weed ordinances was based on a number of subjective factors within the purview of the county officials' discretionary authority.[5] See Engquist, 553 U.S. at 604 ("It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized."). As a result, we find no error in the district court's recognition of the discretionary authority afforded to the Tripp County Weed Board in its enforcement of the noxious weed ordinances.

## C. Remaining Claims

Finally, Novotny argues that the evidence and law supporting his First and Fourteenth Amendment claims also support his civil conspiracy claim. However, the opposite is true: because Novotny has not adequately shown any underlying

---

[5] The Court notes that Novotny has never alleged that he was treated differently based on his membership in a protected category, such as race or gender, so his claim does not "implicate basic equal protection concerns." Engquist, 553 U.S. at 604.

constitutional violations, his civil conspiracy claim must also fail.  See Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 809 (8th Cir. 1999).  Likewise, municipal liability also fails to attach because no underlying constitutional violation has been established.  See Moore v. City of Desloge, 647 F.3d 841, 849 (8th Cir. 2011).

## III.

We affirm the decision of the district court.

_____