WOOD, Circuit Judge,
with whom FLAUM, ROVNER, WILLIAMS, and HAMILTON, Circuit Judges, join,
dissenting.
Ever since the Supreme Court confirmed in Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam), that the Equal Protection Clause of the Constitution extends to “class of one” cases, courts have been grappling with what a plaintiff must plead, and ultimately show, to prevail in such an action. The full court decided to hear this case en banc in the hopes that we might bring some clarity to the matter. The case before us was brought under 42 U.S.C. § 1983 pro se by Lewis Del Marcelle (and originally his wife, but she is no longer involved) against several state defendants for alleged discrimination. The district court dismissed Del Marcelle’s *906 complaint for failure to state a claim on which relief may be granted. Five judges have concluded that Del Marcelle’s complaint not only fails to meet the standard for pleading a class-of-one case, but that it cannot be salvaged. Five other judges, myself included, believe that his current complaint is legally insufficient, but that he should be given a chance to replead under the correct standard. Beyond that bottom-line disagreement, there is a more fundamental difference of opinion about the proper standard in this kind of case. A plurality consisting of five members of the court agrees with the standard set forth in this opinion; four members have adopted the standard described in Judge Posner’s concurrence; and Chief Judge Easterbrook has offered yet another approach. Because we are equally divided, none of these opinions has precedential significance: we must affirm the judgment of the district court by an equally divided court. Five judges of this court dissent from that result, for the reasons set forth in this opinion.
I
We accept the account of the facts set forth in Del Marcelle’s complaint, as helpfully summarized by the outstanding counsel the court recruited to assist him before the en banc court. (Naturally we do not vouch for any of these facts; we simply follow the accepted rules for evaluating complaints under Federal Rule of Civil Procedure 12(b)(6).) For over 20 years, the Del Marcelles have lived in Glenmore, Wisconsin, a town located in rural southeastern Brown County. (Packers fans will know that Lambeau Field is located in Brown County’s seat, the City of Green Bay.) As part of the purchase of their home, they acquired rights to a liquor license associated with the Glenmore Opera House.
This case had its origin in a dispute that arose between Del Marcelle and members of a local motorcycle gang and their associates; the latter included various law enforcement personnel. The dispute escalated into active harassment and threats against the Del Marcelles from the gang members. Explosive devices were placed next to his home; his car was damaged; he suffered property theft and vandalism; and he received threatening phone calls. His wife was so distressed by this campaign that she attempted suicide. The gang also annoyed Del Marcelle with very loud muffler sounds around the clock; members would constantly ride their motorcycles past his house or idle in front of it.
One such gang member was Mark Taggart, who made loud sounds with his motorcycle right outside Del Marcelle’s home, twice disrupted a wedding ceremony that the Del Marcelles were attending; he also made threatening phone calls to the home. Gang leader Karl Guns, along with others, tried to run over Del Marcelle with their cars. Guns is a relative of Officer Guns of the Brown County Sheriffs Department; Taggart is a friend or associate of other law-enforcement officials, and has been an officer himself.
The Brown County Sheriffs Department has law-enforcement responsibilities in Glenmore. Faced with this unrelenting harassment, Del Marcelle turned to the Sheriff and other governmental entities for help, filing numerous complaints. Not only were his pleas ignored, but based on competing complaints from others, the Department issued citations to Del Marcelle himself for actions he had taken in response to his mistreatment. In the end, the Del Marcelles tired of fighting. They sold their home and moved to the Village of Ashwaubenon, which is also in Brown County. But the motorcycle gangs followed them there and continued their harassment. By 2009, Taggart was living *907 on the same street as Del Mareelle. Each of them complained about the other to the Ashwaubenon Police. Del Mareelle received a citation based on Taggart’s complaints, but the police would not accept Del Mareelle’s complaint; they told him that they would not help him because he was crazy.
On September 13, 2010, Lewis and Ellen Del Mareelle (acting pro se) filed a complaint in federal court under 42 U.S.C. § 1983 against Brown County, County Executive Tom Hintz, the Village of Ashwaubenon, Village President Mike Aubinger, and one “unknown John Doe.” Brown County and Hintz responded on September 28 with a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. Del Mareelle parried that motion with three exhibits filed on October 5, through which he hoped to “qualify” his complaint. A week later, the district court dismissed the complaint against all defendants, even though Ashwaubenon and Aubinger had answered without filing a Rule 12 motion. The order of dismissal gave Del Mareelle no chance to replead. Del Mareelle filed a timely notice of appeal. On April 12, 2011, this court ordered that the appeal would be taken up by the full court. The court recruited Thomas L. Shriner, Jr., of the law firm of Foley & Lardner LLP, to represent Mr. Del Marcelle. We join our colleagues in thanking Mr. Shriner, his colleague Kellen C. Kasper, and the firm for their fine work.
II
At the time the order for en banc hearing was issued, the court directed the parties to supplement the briefs that had been filed by addressing the following issues:
(1) In cases of alleged “class-of-one” discrimination by front-line public officers, such as police officers, who exercise a broad discretionary authority that frequently involves subjective, ad hoc judgments, as distinct from class-of-one discrimination effectuated by legislative or regulatory classifications, what should be the governing legal standard?
(2) Specifically, what if any role should proof of “animus” play in such cases? Or should the rational-basis standard, supplemented where appropriate by the rules forbidding intentional discrimination on the basis of a protected characteristic, be the governing standard as it is when legislative or regulatory classifications, as distinct from subjective discretionary decisions, are challenged as class-of-one discrimination?
(4) What bearing on questions 1 and 2 have Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam), and Engquist v. Oregon Dep’t of Agriculture, 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008)? After Engquist, is even a rational basis required for subjective, discretionary decisions? Would the use of a system of random or arbitrary enforcement decisions (such as a police officer’s choice about which speeders to ticket) satisfy rational-basis review, or is rational-basis review unnecessary for such decisions?
The discussion that follows draws on each of these points as needed.
Ill
A
Before turning to the heart of this case — the standard that governs class-of-one cases — we address a preliminary, but fundamental question that is raised in Chief Judge Easterbrook’s separate opinion: whether Del Mareelle has standing to pursue this claim at all. This depends on how one understands Del Marcelle’s complaint. Read one way, it could be seen as *908 an assertion of a right to have the law-enforcement authorities in Brown County take action on his behalf. As we explain, the Supreme Court has squarely rejected this theory. But read another way, Del Marcelle is not asserting a right to any particular level of law enforcement or any particular response to his complaints: he is instead saying only that he is entitled to equal treatment, whether that be bad, good, or something in between. The latter theory is a valid one. A person who has been adversely affected by discrimination has suffered injury-in-fact; the differential treatment is the cause of his injury; and that injury can be redressed either by damages or injunctive relief. No more is required to support standing. See Camreta v. Greene, — U.S. -, 131 S.Ct. 2020, 2028, 179 L.Ed.2d 1118 (2011) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).
It is quite possible that this limitation will significantly constrict cases like Del Marcelle’s. But a review of two Supreme Court decisions — Town of Castle Rock v. Gonzales, 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), and Linda R.S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) — leaves no doubt that a plaintiff has no right to insist that the law-enforcement officers in his area arrest his tormenters. Gonzales involved particularly heart-wrenching facts. Respondent Jessica Gonzales had obtained a restraining order against her husband, restricting the times during which he was entitled to visit the couple’s three daughters. Despite the order, he stopped by Gonzales’s house and took the three girls without permission. To make a long, sad, story short, after Gonzales frantically tried in vain to persuade the police to enforce the court order, her husband showed up at the police station in the middle of the night, started firing at the police, and was killed. The bodies of the three girls were then found in his car.
Gonzales sued the town of Castle Rock on the theory that it had violated the Due Process Clause of the Fourteenth Amendment by failing to respond properly to her repeated efforts to induce it to enforce the restraining order. The Supreme Court found that she had failed to state a claim. Even though the order contained language that made it appear to be mandatory, the Court noted that this language could not overcome “[t]he deep-rooted nature of law-enforcement discretion.” 545 U.S. at 761, 125 S.Ct. 2796. And even if Colorado law somehow made enforcement of the law mandatory, the Court added, “that would not necessarily mean that state law gave respondent an entitlement to enforcement of the mandate.” Id. at 764-65, 125 S.Ct. 2796. Finally, even if such an entitlement were found, the Court expressed doubt that an individual entitlement to the enforcement of a restraining order would amount to a “property” interest for purposes of the Due Process Clause. It concluded with broad language: “the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its ‘substantive’ manifestations.” Id. at 768, 125 S.Ct. 2796, referring to DeShaney v. Winnebago C’nty Dep’t of Soc. Servs., 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), and Parratt v. Taylor, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).
Linda R.S. also involved a family-law matter — the more conventional problem of a parent who fails to support an illegitimate child. The Texas statute at issue imposed a support duty only on parents of legitimate children. In her lawsuit against the child’s father, the mother complained that the district attorney was refusing to *909 enforce a duty of support solely based on this statute, which she asserted was unconstitutional. The Supreme Court looked carefully at the relief the mother was seeking and concluded that she had no standing to pursue it. As it said, “in the unique context of a challenge to a criminal statute,” 410 U.S. at 617, 93 S.Ct. 1146, there was not enough to justify judicial intervention, even though the Court recognized the practical injury the mother had suffered. But she could not trace her injury to the nonenforcement of the Texas support statute. If she were granted relief, the only thing that would happen would be the jailing of the father; there was no guarantee that support payments would be forthcoming in the future. More generally, the Court held that its “prior decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.” Id. at 619, 93 S.Ct. 1146.
Gonzales squarely forecloses any due process theory that might be lurking in Del Marcelle’s complaint. He may have believed that the Brown County Sheriffs Department, or the police in Glenmore or Ashwaubenon, were violating his due process rights when they did not respond to his complaints about the motorcycle gangs, but he has no legally enforceable right to have the police come and make any particular arrests. And Linda R.S. does the same for any claim Del Marcelle might raise to force the police or the prosecutors to pursue the gangs.
But plaintiffs are not required to plead legal theories, even in the new world of pleading that is developing in the wake of the Supreme Court’s decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Instead, the complaint must simply “contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.” 556 U.S. at 678, 129 S.Ct. at 1949. The fact that a complaint does not state a claim under the Due Process Clause, or that a plaintiff would not have standing to seek the criminal prosecution of another, does not necessarily preclude a valid assertion of an equal protection violation. (It is worth noting, however, that Del Marcelle invoked the Equal Protection Clause several times in his pro se submissions.)
The distinction between a due process theory and an equal protection claim was brought out in this court’s opinion in Hilton v. City of Wheeling, 209 F.3d 1005 (7th Cir.2000), which noted that the right to petition government, made applicable to the states by the Fourteenth Amendment’s Due Process Clause, does not carry with it any right to police assistance or other government services. But, the opinion continued:
A complaint of unequal police protection in violation of the equal protection clause is less easily disposed of. On the one hand, the clause, concerned as it is with equal treatment rather than with establishing entitlements to some minimum of government services, does not entitle a person to adequate, or indeed to any, police protection. On the other hand, selective withdrawal of police protection, as when the Southern states during the Reconstruction era refused to give police protection to their black citizens, is the prototypical denial of equal protection.
Id. at 1007.
Other examples of sound equal protection claims that exist even where there would be no underlying due process right come readily to mind. For example, although there is no constitutional requirement that a state provide a system of appellate review, if the state chooses to do so, it cannot discriminate against indigent *910 defendants. Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (addressing transcripts for indigent defendants); see also Douglas v. California, 372 U.S. 353, 357-58, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (holding that states must provide appellate counsel for indigent defendants). Examples of this principle in noncriminal cases are also easy to find. Even though a student has no due process right to be admitted to a state university, she is entitled to complain about state university admissions systems that allegedly discriminate on the basis of race. Gratz v. Bollinger, 539 U.S. 244, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003); see also Fisher v. University of Texas at Austin, No. 11-345, cert. granted, Feb. 21, 2012. And even though a citizen has no due process right to any particular kind of tax system, he is entitled to complain about discrimination in the administration of a tax system. See Hillsborough v. Cromwell, 326 U.S. 620, 623, 66 S.Ct. 445, 90 L.Ed. 358 (1946) (“The equal protection clause ... protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class.”); see also Armour v. Indianapolis, No. 11-161, argued Feb. 29, 2012 (presenting the question whether the Equal Protection Clause precludes a local taxing authority from refusing to refund payments made by those who have paid their assessments in full, while forgiving the obligations of identically situated taxpayers who choose to pay over a multi-year installment plan).
Importantly, the equal protection claim that Del Marcelle is trying to raise is different from a claim that takes issue with an arrest or a citation. If all that Del Marcelle were arguing was that police should not have cited him because he had done nothing wrong (and in fact, it was the bikers who were the real offenders), that would be akin to challenging the citations themselves, or perhaps it would provide support for a state-law claim of selective prosecution. The citations themselves, however, are not necessary to Del Marcelle’s equal protection claim. The point is that the police are treating him differently, in a way that injures him. Whether that differential treatment takes the form of baseless citations, or malicious arrests, or any other adverse action, makes no difference.
The question before the court is thus whether Del Marcelle’s complaint (or a possible amended complaint) might be read to state a class-of-one claim under the Equal Protection Clause. It is useful to begin by locating class-of-one cases within the broader context of equal protection jurisprudence. From there, we take a closer look at the substantive requirements for these cases, and finally we consider what is required to plead such a case.
B
The familiar language of the Equal Protection Clause is as good a starting point as any. It says “nor [shall any State] deny to any person within its jurisdiction the equal protection of the laws.” U.S. Const. Amend. XIV, § 1. The Supreme Court has repeatedly confirmed that the Clause “protects] persons, not groups.” Engquist, 553 U.S. at 597, 128 S.Ct. 2146 (quoting Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995)); see also Shelley v. Kraemer, 334 U.S. 1, 22, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Although the concept of the Clause requires comparison between the injured party and others, the Court has also said that “the number of individuals in a class is immaterial for equal protection analysis.” Olech, 528 U.S. at 562 n. *, 120 S.Ct. 1073. As the Court succinctly put it in City of Cleburne v. Cleburne Living Center, Inc., the Equal Protection Clause “is essentially a direction that all persons *911 similarly situated should be treated alike.” 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Straightforward as this may sound, however, experience shows that a great deal lurks below the surface. The questions of who bears the burden of demonstrating that a person is not receiving the “equal protection of the laws” to which the Constitution entitles her, and what it takes to meet that burden, are more complex.
The Cleburne Court summarized the answers to these questions in a way that is helpful:
The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.
The general rule gives way, however, when a statute classifies by race, alien-age, or national origin.
473 U.S. at 440, 105 S.Ct. 3249 (internal citations omitted). Although this passage speaks of legislation, Engquist confirmed that the Clause’s protections “apply to administrative as well as legislative acts.” 553 U.S. at 597, 128 S.Ct. 2146.
A moment’s thought shows that a true class-of-one case (that is, one that does not implicate fundamental rights) falls under the “general rule” that the Court has articulated — in other words, the allegedly unequal treatment of the “one” must be upheld as long as it is rationally related to a legitimate state interest. As the Supreme Court has said, “[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.” City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). If a classification is based on a forbidden characteristic, then by definition it would not be a class-of-one case. Under rational-basis review, the Court continued, “it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.” Id. at 303-04, 96 S.Ct. 2513. It is the plaintiff who bears the heavy burden of showing such a complete lack of rationality in the challenged state action.
The Supreme Court’s two recent class-of-one cases confirm in our view that this is the standard faced by the Del Marcelles of the world. In Olech, the Court recalled that it had “recognized successful equal protection claims brought by a ‘class of one,’ where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.” 528 U.S. at 564, 120 S.Ct. 1073. The Court specifically declined to reach the question whether subjective ill will is also required in these cases. Id. at 565, 120 S.Ct. 1073. Engquist reaffirmed Olech, quoting with approval the language to which we have just referred. 553 U.S. at 601, 128 S.Ct. 2146. Stressing the importance of the capacity in which a state acts, however, Engquist held that when the state acts as an employer, the class-of-one theory is unavailable. In so holding, it relied on a long line of cases that have recognized in other constitutional areas the unique position of the government-as-employer. See, e.g., O’Connor v. Ortega, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (Fourth Amendment); Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (Due Process); Con *912 nick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (First Amendment).
At the same time, the Court offered some observations about “forms of state action ... which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.” 553 U.S. at 603, 128 S.Ct. 2146. In such cases, it noted, the rule that people should be treated alike, under like circumstances and conditions, is not violated merely because one person is treated differently from others, because the difference in treatment is an accepted consequence of the discretion granted. Id. It gave as examples of the latter situation the traffic officer posted on a busy highway who randomly chooses from all who are speeding just a few who receive a ticket. This does not represent impermissible discrimination, the Court opined, with the following comment:
But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself — the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.
Id. at 604, 128 S.Ct. 2146. The Court then applied that principle to the employment context, noting that employment decisions are often subjective and individualized. Id. The Court explicitly noted, nevertheless, that it was not categorically ruling out class-of-one cases for anything but those involving public employment. Id. at 607, 128 S.Ct. 2146 (“[T]he class-of-one theory of equal protection has no application in the public employment context — and that is all we decide____”).
This case presents the question how Olech and Engquist apply at a more general level. In particular, the issue is whether it is enough for a class-of-one plaintiff to plead and ultimately to prove irrationality in the state’s action, or if in addition the plaintiff must demonstrate illegitimate animus. One group of cases has required the latter showing. See, e.g., Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir.2000); Purze v. Vill. of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir.2002); Cruz v. Town of Cicero, 275 F.3d 579, 587 (7th Cir.2001). Another group has phrased the test in the alternative, looking to see if there was no rational basis for the difference in treatment or the cause of the differential is “totally illegitimate animus.” Lunini v. Grayeb, 395 F.3d 761, 768 (7th Cir.2005); see also McDonald v. Vill. of Winnetka, 371 F.3d 992, 1001 (7th Cir.2004). Panels of the court have noted the confusion in our case law on more than one occasion. See, e.g., Srail v. Vill. of Lisle, 588 F.3d 940, 944 (7th Cir.2009); Racine Charter One, Inc. v. Racine Unified Sch. Dist., 424 F.3d 677, 683-84 (7th Cir.2005). Other courts of appeals have also stated the test in divergent ways. See, e.g., Analytical Diagnostic Labs v. Kusel, 626 F.3d 135, 140 (2d Cir.2010) (not imposing an animus requirement but requiring plaintiffs to show that “decisionmakers were aware that there were other similarly-situated individuals who were treated differ *913 ently”); Lindquist v. City of Pasadena, 525 F.3d 383, 387 (5th Cir.2008) (explicitly declining to impose an animus requirement). We had hoped to make some sense of all of this, but regrettably, that proved to be impossible. At most, perhaps, the differences among us narrowed slightly as a result of this litigation, but ultimate resolution will have to await another day.
C
As the Tenth Circuit has observed, it is necessary to pay attention to both the substantive standards and the pleading standards that govern these claims. See Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210 (10th Cir.2011). Del Marcelle faces the challenge of presenting a case that is governed by the equal protection theory that gives the greatest deference to the state actor. He does not assert that he belongs to any class that receives special solicitude from the courts, nor is he saying that the actions of the Brown County Sheriff or the various municipal police officers infringed any fundamental right that the Supreme Court has recognized. The state actions in question are therefore entitled to a presumption of constitutionality; they can be disturbed only if they are in fact discriminatory, and if that discrimination lacks any conceivable rational basis; it is the plaintiffs burden to show why that might plausibly be the case. We use the word “plausibly” here for a reason. That is the standard that the Supreme Court has adopted for judging the adequacy of pleadings.
As we explain below, in our view a plaintiff seeking to present a class-of-one case must include in his or her complaint plausible allegations about the following elements: (1) plaintiff was the victim of intentional discrimination, (2) at the hands of a state actor, (3) the state actor lacked a rational basis for so singling out the plaintiff, and (4) the plaintiff has been injured by the intentionally discriminatory treatment. In so doing, the plaintiff must present facts — not bare legal conclusions — that support these points. Twombly, 550 U.S. at 544, 127 S.Ct. 1955; Iqbal, 556 U.S. at 662, 129 S.Ct. 1937; Swanson v. Citibank, 614 F.3d 400 (7th Cir.2010). In particular, the complaint must set forth a plausible account of intentional discrimination, which is required for any violation of the Equal Protection Clause. See, e.g., Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); Wayte v. United States, 470 U.S. 598, 610, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (“[Discriminatory purpose” can be shown by demonstrating that “the decisionmaker ... selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects....”) (quotation omitted). This is no small task. The complaint must also indicate how the plaintiff proposes to shoulder the burden of demonstrating the lack of a rational basis. There is no single way to accomplish that task, but, as Engquist stresses, a plaintiff must do more than show that state actors who have legitimately been delegated discretion to act simply exercised that discretion. It is entirely rational, in other words, to permit state actors to make individualized decisions when the very nature of their job is to take a wide variety of considerations into account.
The other factors that have crept their way into our class-of-one cases — personal animus, illegitimate motives, inexplicable deviations from clear rules — are not primary rules. They are instead illustrative of the kind of facts on which a plaintiff might rely in a complaint to show that the lack of a rational basis is not merely possible, but plausible. In some instances, well illustrated by Olech, the state actor may inexplicably have failed to follow what the Engquist Court called a “clear standard against which departures, even for a single plaintiff, could be readily assessed.” 553 *914 U.S. at 602, 128 S.Ct. 2146. Plaintiff need only plead the existence of such a standard and the state actor’s failure to meet that standard in order to satisfy Twombly and Iqbal and go forward. In many other eases, however, more will be required to cross the line between possibility and plausibility of intentional, irrational behavior. Often something like animus, or the lack of justification based on public duties for singling out the plaintiff (as Judge Posner proposes), or an impermissible personal motivation, will serve that purpose. Again, as the Supreme Court indicated in Engquist, it will not be enough to challenge “what in its nature is a subjective, individualized decision” solely with the accusation “that it was subjective and individualized.” Id. at 604, 128 S.Ct. 2146. That sort of accusation would not be enough to show plausibly that plaintiff will be able to rebut the presumption of rationality.
The Tenth Circuit took much the same approach as the one we are describing in its Kansas Penn decision. It held that a class-of-one plaintiff bears a “substantial burden” to describe those who are similarly situated in all material respects (i.e., others who have been treated more favorably), how plaintiff was treated differently, and that there is “no objectively reasonable basis for the defendant’s action.” 656 F.3d at 1217. That court, however, thought that it was necessary at the pleading stage to provide evidence of the comparators, rather than saving that detail for summary judgment. This represented an extension of the holdings in the cases on which it relied, all of which involved the affirmance of summary judgment for the defendants. See 656 F.3d at 1217-18, citing Jicarilla Apache Nation v. Rio Arriba C’nty, 440 F.3d 1202, 1212 (10th Cir.2006); Jennings v. City of Stillwater, 383 F.3d 1199, 1214 (10th Cir.2004); Analytical Diagnostic Labs, 626 F.3d at 143; Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir.2007); and Purze, 286 F.3d at 455; see also McDonald, 371 F.3d at 1009 (affirming summary judgment based on failure to prove comparators).
In Geinosky v. Chicago, 675 F.3d 743 (7th Cir.2012), this court held that there was “no basis for requiring the plaintiff to identify [the similarly situated] person in the complaint.” Id. at 748 n. 3 (emphasis in original). That was because Geinosky alleged that police had given him numerous baseless parking tickets over a long period of time; to require Geinosky to name a specific comparator in his complaint would have asked him to do nothing more than point to another random person in Chicago, who had not received the same pattern of parking tickets. The allegation of discrimination under these circumstances was enough in itself to signal that others were not being subject to the same kind of harassment. It was thus not essential that Geinosky identify a specific comparator in order to paint a plausible picture of intentional discrimination without a rational basis — there was no conclusion that could be drawn, other than the police had targeted Geinosky alone to receive a series of baseless tickets.
Not all cases will be this straightforward. In some, as part of the burden of pleading intentional discrimination, plaintiff may need to be more explicit about how his or her treatment was different from that of others. This flows from the substantive test for an equal protection claim: discrimination for this purpose occurs when one is “intentionally treated differently from others similarly situated.” Olech, 528 U.S. at 564, 120 S.Ct. 1073; see also City of Cleburne, 473 U.S. at 439, 105 S.Ct. 3249. It may be difficult to accomplish this task without including some facts in the complaint that tell the court who (if it is not obvious, as it was in Geinosky) falls in the favored class-of-many. These *915 kinds of details could, as a practical matter, be essential to signal how the plaintiff proposes to rebut the presumption that an officer with discretion to consider a variety of factors has done nothing more than exercise that discretion. Plaintiff must plead facts showing that his unfavorable treatment could not have rested on a legitimate exercise of discretion conferred by the relevant laws. The more discretion an official has, the more difficult this task will be. But as Geinosky demonstrates, in some cases the discriminatory nature of the official conduct will be apparent even without any particularized allegations about the favored group, and so we would not impose an across-the-board requirement that plaintiffs identify a specific comparator in the complaint. To the extent that this deviates from the Kansas Penn holding (and the difference may be only superficial, since the facts before that court were different from those in Geinosky ), we would part company with the Tenth Circuit. We believe that it is enough, as we have already said, to plead the four elements set forth earlier: intentional discrimination, on the part of a state actor, lack of a rational basis, and injury.
This approach “addresses the main concern with the class-of-one theory — that it will create a flood of claims in that area of government action where discretion is high and variation is common.” Kansas Penn, 656 F.3d at 1218. Given the presumption of validity that attaches to both state legislation and administrative or executive activity, a plaintiff will often need to set out relatively detailed allegations to exclude the possibility that a defendant acceptably exercised discretion. This task will be easier, as Engquist pointed out, when the state has inexplicably deviated from a clear rule like the easement length in Olech; it will be more difficult for cases attempting to attack decisions where discretion plays a significant role. As the Supreme Court warned in Twombly and reiterated in Iqbal, “[wjhere a complaint pleads facts that are merely consistent with a defendant’s liability, it stops short of the line between possibility and plausibility of entitlement to relief.” 556 U.S. at 678, 129 S.Ct. at 1949. Qualified immunity will also frequently reheve state actors of the burden of litigation in this area: if discretion is broad and the rules are vague, it will be difficult to show both a violation of a constitutional right and the clearly established nature of that right. See, e.g., Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).
This illustrates how one would distinguish the case of the police officer who cannot stop all speeding cars and thus randomly selects just a few from a proper class-of-one case. At first blush, it might appear that the officer has behaved in an arbitrary fashion, but that impression is easily dispelled: a system of random checks is a rational enforcement mechanism. Police act with limited resources and cannot possibly stop every single speeder. Furthermore, it would be almost impossible to demonstrate intent to discriminate against the particular stranger whom the police officer happened to pull over. As Kansas Penn noted, “the fact that government action is infrequent, or that a formerly unenforced regulation is enforced, is not enough to create a federal cause of action.” 656 F.3d at 1220; see also Chavez v. Illinois State Police, 251 F.3d 612 (7th Cir.2001) (finding that plaintiffs failed to prove intentional race discrimination in highway stops made by Illinois State Police, and thus failed to state an equal protection claim). Only if the complaint offers facts that would support the elements outlined above should it be able to survive a motion to dismiss under Rule 12(b)(6).
*916 D
Last, we explain why we would refuse the invitation from the appellees to extend Engquist’s holding to all forms of law enforcement. This court has, it is true, held that no class-of-one claim is possible for a person who wants to complain, essentially, about prosecutorial discretion. United States v. Moore, 543 F.3d 891 (7th Cir.2008). In Moore, the defendant argued that the Equal Protection Clause is violated by the law that allows a criminal sentence below the statutory mandatory minimum only upon a government motion based on substantial assistance. That opinion first noted that Moore was not similarly situated to others who had been prosecuted in state court for offenses involving approximately the same drug amounts. More important, however, was the fact that Moore’s argument was flatly inconsistent with the theory of nearly complete prosecutorial discretion that prevails in our system. (We say “nearly” because that discretion, as was noted in Moore, is subject to constitutional constraints such as the prohibition against discrimination on the basis of race or religion. But that qualification played no part in either Moore’s case, nor is it relevant here.) Critically for present purposes, even irrationality is not a ground on which prosecutorial discretion may be challenged. Id. at 900. With irrationality off the table, it follows that the third element of a class-of-one equal protection claim can never be satisfied when the attempted attack is on an exercise of prosecutorial discretion. E.g., United States v. Green, 654 F.3d 637 (6th Cir.2011) (rejecting equal protection challenge to prosecution’s decision to proceed in civilian rather than military court). We thus have no problem adhering to the holding in Moore to the effect that there is no place for a class-of-one theory directed against prosecutorial decisionmaking.
The situation presented in cases challenging police action is quite different, as this court explained in Hanes v. Zurick, 578 F.3d 491 (7th Cir.2009):
Although the police enjoy broad freedom of action, their discretion is much narrower than the discretion given to public employers. First, in contrast to an employer, who is entitled to make decisions based on factors that may be difficult to articulate and quantify, an officer must justify her decision to stop a suspect by pointing to “articulable facts.” And while employment decisions are inherently subjective, subjective intentions play no role in evaluating police seizures under the Fourth Amendment.... [Ajsking a court to determine whether a police officer’s act was constitutional is not at all unprecedented.
Id. at 495 (internal citations and quotation marks omitted). The plaintiff in Hanes had alleged that the police were motivated by malice and had no reason related to their official duties for their actions. Had this been all, the complaint likely would have been dismissed under Iqbal for containing nothing but a conclusion of law. The complaint, however, included details that showed that this was not merely possible but was actually plausible. The police had arrested Hanes eight times; those arrests had led to 13 criminal charges for minor crimes; yet every charge was later dropped. At the same time, the police were ignoring Hanes’s own complaints against others, no matter what the underlying facts.
Defendants point to a recent decision of the Eighth Circuit, Novotny v. Tripp County, 664 F.3d 1173 (8th Cir.2011), which they say has extended Engquist to discretionary law-enforcement decisions like those at issue here. We do not read Novotny so broadly. Among other complaints, Novotny charged that county offi *917 cials were unequally enforcing the county’s weed ordinances against him. But his only evidence for this was hearsay in two letters from the state Department of Agriculture to the county weed board — evidence that was insufficient to support summary judgment. Only after making that point did the Eighth Circuit add that Novotny had failed to state a class-of-one claim, because the weed ordinance was a uniform rule with necessarily discretionary enforcement. 664 F.3d at 1179. In the absence of any reason to think that the Department of Agriculture and the weed board were discriminating against Novotny in an entirely irrational way— and Novotny provided none — this ruling is entirely consistent with the rule we are proposing. Although the Eighth Circuit, in passing, cited Engquist for the proposition that the class-of-one principle does not apply to discretionary decisions based on a broad array of subjective, individualized criteria, see id., this point was neither explored fully nor was it necessary to the outcome. We therefore consider Novotny to be distinguishable from the ease before us.
Because police action of the type alleged in Hanes and in Del Marcelle’s case falls closer to the “discretionary” end of the spectrum, a putative class-of-one complainant faces a much higher burden to show that the exercise of that discretion was irrational. This, we believe, is what our court and others have been driving at ever since Olech and Engquist in the suggestions that animus, or malice, or lack of any possible legitimate state purpose, plays a part in class-of-one cases. Those motive elements are not always necessary, as Olech illustrates, and indeed, it is not clear to us that Judge Posner’s separate opinion even takes that position. Nor should animus (or something similar) be seen as an alternative to a showing of irrationality. Instead, in the cases that do not rest on the state’s failure to follow a clear standard, the plaintiff has the burden of showing in the complaint some plausible reason to think that intentional and irrational discrimination has occurred. Pleading animus or improper purpose will often be an effective way to accomplish that goal.
* * *
Fanciful stories of persecution, backed up by nothing but conclusory allegations, will not pass the bar established by Rule 12(b)(6). But there will be occasional cases that do, as the Supreme Court has taught. We return to the most basic proposition: the Equal Protection Clause protects individual persons, not groups. If a plaintiff can meet the pleading burdens we have described here, then he or she should be entitled to pursue a class-of-one case.
This brings us to the driving force that has split our court evenly down the middle. Five members would end Del Marcelle’s case here; five would allow him to replead. Unfortunately, this even division has prevented us from coming to rest on the substantive standard that should govern these cases. These standards were unclear, to put it charitably, at the time Del Marcelle filed his pro se complaint, and at the time the district court evaluated it. The full court agrees that as it stands, Del Marcelle’s complaint is inadequate. As we would put it, the complaint fails to meet his substantial burden to present a plausible account that the police acted without any rational basis when they failed to respond to some of his complaints but did respond to the gang members’ corresponding complaints by issuing citations to him. For example, Del Marcelle attached a police report to his complaint showing that police investigated an incident in which Del Marcelle asserted that a gang member tried to run him over. But Del Marcelle’s own filing shows that the police did not ignore his complaint. To the contrary, they spoke to the car driver and various *918 witnesses (except for Del Mareelle, who refused to speak to them). They concluded that Del Mareelle had actually provoked the incident by throwing a rock at the car and shattering its windshield. Del Mareelle provides no reason for the court to-believe that this police report was falsified or to question its conclusions. Thus, at present (even as supplemented by the additional materials we mentioned at the outset) Del Marcelle’s complaint does not plausibly suggest that police officers failed to respond to him because they irrationally discriminated against him. Instead, it appears to be just as likely that police acted rationally by declining to take action on what they determined to be baseless complaints.
The question is what to do now: simply affirm the dismissal, or permit Del Marcelle to replead consistently with an agreed standard. In light of the unsettled state of the law, the general rule favoring an opportunity to replead, and the fact that Del Mareelle was proceeding pro se, we would give him one more chance. The court may think that it can predict what he will be able to do, but it is critical to recall that the factual record has not yet been developed, and so we are all operating in the dark. We are not prepared to express any opinion on the question whether an amended complaint could pass muster. Had the court been willing to give Del Mareelle another chance, it is also worth noting that this would have been more limited than his original suit. Specifically, we would have held that he cannot proceed against the two individual defendants, County Executive Tom Hintz and Ashwaubenon Village President Mike Aubinger, without a showing that each one was personally involved with the course of action he is challenging. Similarly, any complaint against Brown County or Ashwaubenon would have needed to satisfy the criteria of Monell v. New York City Dep’t of Soc. Servs.. 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The district court’s earlier order had nothing to say about either individual liability or municipal liability.
We end with a brief comment on the standard of liability that four members of the court have endorsed. In our view, it will be a difficult one for the district courts to follow. It is all too easy for a plaintiff to accuse someone of a malicious motive and thus to impose on the entire system the burden of going forward. The standard we favor, the one in this opinion, would be easier for the district courts to apply at the pleading stage because it does not require mind-reading. Finally, we are deeply concerned that Judge Posner’s opinion might be read as endorsing a new type of rational-basis test that the Supreme Court has never created — some kind of “rational-basis minus” level of review. We hope that this is not the case, but it seems that he is concerned that too many class-of-one cases will slip by the normal rational-basis screen. We do not share that view, but unfortunately we have not been able resolve the matter in the present case.
We would reverse the judgment of the district court and remand to give Del Marcelle a chance to replead, using the standards we have described in this opinion. We therefore dissent from the order of the court affirming the judgment of the district court.